(C. D. 890)

CROSSE & BLACKWELL CO., INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided November 3, 1944)

Tompkins & Tompkins (*J. Stuart Tompkins* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Frank X. O'Donnell, Jr.*, and *Daniel J. Auster*, special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

EKWALL, Judge: A quantity of merchandise described on the invoice and entry as lemon pulp was imported at the port of Baltimore, Md., and assessed for duty at $.70 a gallon under the provision in paragraph 806 (a) of the Tariff Act of 1930, as fruit juice not specially provided for, containing less than one-half of 1 per centum of alcohol. It was imported in large barrels. Plaintiff in this action makes numerous claims, none of which has been abandoned, but relies upon the claim for assessment at 35 per centum ad valorem as fruit pulp under paragraph 752, and in his supplemental brief argues that if not dutiable as fruit pulp the commodity falls within the provision in paragraph 48 of the same act as "Juice of lemons * * * unfit for beverage purposes," at 5 cents a pound.

The respective paragraphs insofar as pertinent, are as follows:

PAR. 806. (a) Cherry juice, prune juice, or prune wine, and all other fruit juices and fruit sirups, not specially provided for, containing less than one-half of 1 per centum of alcohol, 70 cents per gallon; * * *.

PAR. 752. * * * fruit pastes and fruit pulps, 35 per centum ad valorem; * * *.

PAR. 48. * * *; juice of lemons, limes, oranges, or other citrous fruits, unfit for beverage purposes, 5 cents per pound.

From the samples admitted in evidence it appears that about two-thirds of the contents of the bottle consist of liquid and the remainder of pulp or sediment. From the testimony of the "fruit chemist" connected with the importing firm this sediment consists of cell structures of the lemon and some of the so-called rag of the skin. This witness testified substantially as follows as to the use of the imported commodity. The sulphur dioxide gas content, which acts as a preservative, is removed by heat, after which a quantity of the pulp is put through a machine which removes about two-thirds of the fibrous

material, and thereafter sugar or sirup is added. The commodity is then given another heat treatment and an acid is added. The resultant product is known as "Lemon Cup." This Lemon Cup the witness stated is used in beverages, the proportions being one part of Lemon Cup to three parts water.

This witness stated that lemon juice as he knows it is the juice squeezed from the lemon. It contains no cell structure nor fibrous material, such as is present in lemon pulp. He further testified that the commodity before us contains from 6 to 7 per centum citric acid as shown by his analysis, whereas the "lemon juice sold in the market contains much less than 6 per cent, not more than one or one and one-half per cent."

The plaintiff also produced the testimony of the chief chemist employed by the importer who testified as to the identity of the samples in evidence. He also testified as to the process to which the imported commodity was submitted after importation; that the ultimate product is more in the nature of a liquid; the pulp is in a more finely divided form and there is less of it. He further stated that in his opinion the presence in the commodity of sulphur dioxide in the proportion of 350 parts per million renders it unfit for beverage purposes; that the maximum sulphur dioxide content which lemon pulp might contain and still be palatable or fit for beverage purposes is around 50 or 60 parts per million. It was also brought out by his testimony that the Lemon Cup produced from this imported product is a concentrated beverage, one portion of which is mixed with three portions of water before it is consumed. He differentiated between lemon pulp and lemon juice. Lemon juice, he stated, contains less pulp and the pulpy material is in a more finely divided form than lemon pulp; commercially they are different products. However, on cross-examination he admitted that essentially they are identical except with respect to the larger particles of pulp in lemon pulp.

The Government produced the testimony of Mr. Edward F. Kenney who identified the signature of Mr. P. T. Kirwin formerly chief chemist at the appraiser's laboratory in Baltimore, the port of entry, together with his own signature on the analyses in evidence. This witness read into the record without objection a reference to fruit juices containing sulphur dioxide found in Thorpe's Dictionary of Applied Chemistry, Vol. 1, Fourth Edition, p. 159, as follows:

Non-alcoholic cordials and fruit juices (sweetened or unsweetened) may contain 350 parts per million of sulphur dioxide or 600 parts per million of benzoic acid. In these regulations sulphites are calculated as sulphur dioxide and benzoates as benzoic acid. No other preservative is permissible.

Mr. Kenney testified that if the imported commodity were diluted with sufficient water, it would be palatable. He also stated that lemon juice is mostly a liquid and the pulp more or less fibrous material.

Has the plaintiff shown that the imported commodity was improperly classified and assessed as fruit juice not specially provided for, containing less than one-half of 1 per centum of alcohol, and if so, is this commodity a fruit pulp such as is provided for in paragraph 752, *supra*, and, if not a fruit pulp does it fall within the purview of paragraph 48, *supra*, as "juice of lemons * * * unfit for beverage purposes"? Plaintiff's other claims were not pressed and we find no merit therein.

The record shows that it consists of the juice and pulp of lemons, which after removal of the sulphur dioxide gas content and about two-thirds of the fibrous material and the addition of sugar or sirup and what we take to be citric acid, is known as "Lemon Cup." It is used in beverages, the proportions being one part Lemon Cup to three parts water.

We find nothing in the record sufficient to establish that lemon juice must be free from pulp. The liquid in the instant commodity is from 60 per centum to 70 per centum of the total and the sediment or pulp from 30 per centum to 40 per centum by volume. By weight the liquid is 98 per centum to 98½ per centum of the total. Therefore the major portion of this imported commodity consists of liquid expressed from lemons. A mere examination of the exhibits in evidence is sufficient to show that this is not a paste, and no evidence was adduced on that point. While the testimony of the importer's chemist is that lemon juice contains less pulp and the pulpy material is in a more finely divided form than lemon pulp, we have no evidence as to where the line of demarcation is drawn.

Plaintiff contends that if the commodity is found to be lemon juice it falls within the provision in paragraph 48, *supra*, for "juice of lemons * * * unfit for beverage purposes." Under the holding in the case of *Crosse & Blackwell* v. *United States*, 70 Treas. Dec. 380, T. D. 48556, this claim is untenable. The court there had before it certain settled lime juice obtained by crushing and straining limes. This was held properly dutiable under the same provision for fruit juices as that considered applicable by the collector in the case now before us. In the cited case it was held that the commodity was excluded from the provision in paragraph 48, *supra*, for "juice of * * * limes * * * unfit for beverage purposes," that provision being construed to refer to "commodities that because of defects, such as impurities, etc., are unsuitable for use *in* beverages rather than *as* beverages." [Italics quoted.] We find nothing in the instant case sufficient to warrant us in holding this fruit juice is unsuitable for use in beverages. Therefore it is excluded from the operation of paragraph 48, *supra*.

We therefore find that the presumption of correctness attaching to the collector's classification has not been overcome, and that the

commodity before us is properly dutiable as fruit juice not specially provided for, containing less than one-half of 1 per centum of alcohol, under the provisions of paragraph 806 (a), *supra*, as assessed.

Judgment will be rendered in favor of the defendant.